IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| TERRY G. REID and SUSANNE H. REID, *individually and as next friends of* COOPER DANIEL REID, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § | CIVIL ACTION NO. 2:24-CV-731-JRG |
| RIDDELL, INC., RIDDELL SPORTS GROUP, INC., ALL AMERICAN SPORTS CORPORATION, and BRG SPORTS, INC., | § § § § § | |
| *Defendants*. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Transfer Venue (Dkt. No. 9) filed by Defendants Riddell, Inc., Riddell Sports Group, Inc., All American Sports Corporation, and BRG Sports, Inc. In the Motion, Defendants seek an intra-district transfer to the Tyler Division of the Eastern District of Texas. (*Id.* at 1). Plaintiffs oppose the Motion, arguing that it is not "clearly more convenient" to litigate this case in Tyler, rather than Marshall. (Dkt. No. 18, at 1–2 (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013))). Having considered the Motion and the related briefing, and for the reasons set forth below, the Court finds that the Motion should be and hereby is **DENIED**.

**I.    BACKGROUND**

This case concerns a tragedy that occurred during Troup High School's 2022 homecoming football game. During that game, Cooper Daniel Reid ("Reid") suffered a traumatic brain injury due to an alleged defect in the Riddell SpeedFlex helmet he wore while playing as one of the Troup Tigers' linebackers. (Dkt. No. 18, at 2). Following on-field treatment by first responders, Reid spent approximately one month at Christus Trinity Mother Frances Hospital in Tyler, Texas, before being transferred to TIRR Memorial Hospital in Houston in February 2023.

(Dkt. No. 9, at 2). Since then, Reid has received both in-patient and out-patient care of varying capacities, degrees, and lengths in Houston, Dallas, and Galveston, returning to Troup as permitted. (Dkt. No. 18-1, at 1–2). Plaintiffs report that, while Reid "received his initial emergency treatment in Tyler, the bulk of [his] medical care has occurred in the Houston area." (*Id.* at 2). Similarly, plaintiffs represent that "[i]t is more likely than not that [Reid and his family] will continue to be in Houston . . . while this litigation is pending so that [he] can continue to receive the medical treatment and rehabilitation that he needs." (*Id.* at 2).

Plaintiffs filed this product-liability and negligence suit on September 6, 2024. (Dkt. No. 1, at 7–9). On January 3, 2025, defendants filed the Motion *sub judice*. (Dkt. No. 9, at 1).

## II.  APPLICABLE LAW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Neither party disputes the propriety of this District or that this case could have been brought in the Tyler Division. (Dkt. No. 9, at 4–5; Dkt. No. 18, at 5). Thus, the question becomes whether "transfer is warranted in the interest of convenience." *Schwartz v. United States*, No. 2:23-cv-528-JRG, 2024 WL 3347371, at *1–2 (E.D. Tex. July 9, 2024).

In evaluating convenience, the Court "considers the Fifth Circuit's non-exhaustive list of private and public interest factors." *Id.* at *1 (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*)). "The private interest factors include: (1) 'the relative ease of access to sources of proof,' (2) 'the availability of compulsory process to secure the attendance of witnesses,' (3) 'the cost of attendance for willing witnesses,' and (4) 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* (quoting *Volkswagen I*, 371 F.3d at 203). "The public interest factors include: [5] 'the administrative difficulties flowing from court

2

congestion,' [6] 'the local interest in having localized interests decided at home,' [7] 'the familiarity of the forum with the law that will govern the case,' and [8] 'the avoidance of unnecessary problems of conflict of laws of the application of foreign law.'" *Id.* (quoting *Volkswagen I*, 371 F.3d at 203).

"While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof." *Id.* (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*)). Thus, to prevail on a motion like this, a movant "must demonstrate that the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff." *Id.* (quoting *Volkswagen II*, 545 F.3d at 315). "Absent such a showing, however, the plaintiff's choice is to be respected." *Id.* Put differently, "[w]here the present and proposed forums are both roughly similar in terms of convenience, courts should not conclude that the proposed transferee forum is 'clearly more convenient.'" *Id.* at *6 (quoting *Volkswagen II*, 545 F.3d at 315)).

"When deciding a motion to transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings, such as affidavits or declarations, but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Hammers v. Mayea-Chang*, No. 2:19-cv-181-JRG, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019).

### III. DISCUSSION

The parties agree that Factor 2, Factor 5, Factor 7, and Factor 8 are all neutral. (Dkt. No. 9, at 7, 10; Dkt. No. 18, at 6, 12). They disagree, however, on the application and effect of the remaining factors. Seeing "no reason to overturn the parties' agreement" on the uncontested factors, *Scwartz*, 2024 WL 3347371, at *2, the Court addresses each disputed factor in turn.

### A. Factor 1: Relative Ease of Access to Sources of Proof

First, Defendants argue that Factor 1, the access-to-proof factor, weights in favor of transfer. (Dkt. No. 9, at 5–7). The parties agree that this factor primarily considers the location of physical evidence and documents. (*Id.* at 5; Dkt. No. 18, at 7). Defendants point to four categories of relevant evidence: "(i) information relating to the Helmet's design; (ii) the Helmet itself; (iii) documents relating to Troup High School's football program and [Reid]'s participation in the same; and (iv) medical records regarding [Reid]'s pre-incident and post-incident health." (Dkt. No. 9, at 5–6).

Defendants concede that the evidence in (i) above is neutral because it is located in Illinois but argue that the remainder favor transfer. (*Id.*). Defendants urge that the location of the helmet and the football records both point toward transfer because they were located in Troup at the time this lawsuit was filed. (*Id.*). Defendants also maintain that the medical records favor transfer because portions of his treatment occurred in Tyler. (*Id.* at 7).

Plaintiffs disagree. Plaintiffs contend that the Illinois-based information actually favors Marshall because of its proximity to the Shreveport airport. (Dkt. No. 18, at 7). Next, Plaintiffs dispute the weight of the Troup-based evidence because (1) the helmet is now located in Houston and (2) the football records are available electronically. (*Id.*). Lastly, Plaintiff emphasizes that the majority of Reid's treatment occurred in Houston, which it maintains favors Marshall because of the "travel options from Houston"—i.e., the fact that there are direct flights from Houston to Shreveport but not from Houston to Tyler. (*Id.*).

On balance, the Court finds that this factor is neutral. The vast majority of the evidence is neither located in Tyler nor Marshall. Rather, it is centered in Illinois and Houston. Defendants make much of the fact that the helmet at issue was located in Troup at the time suit was filed, but

4

it is now located in Houston, and it does not appear that this location change was "created to manipulate the propriety of venue." (Dkt. No. 19, at 1 (quoting *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009)). Indeed, aside from the helmet, it appears that much—if not all—of the remaining evidence is or could be accessed electronically. *See In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 360 (5th Cir. 2022) ("The location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature."). Accordingly, the Court finds that this factor is neutral.

### B. Factor 3: Cost of Attendance for Willing Witnesses

Next, Defendants argue that Factor 3, the cost of attendance for willing witnesses, favors transfer. On this point, Defendants primarily discuss the fact that certain witnesses live in and around Troup and that Troup is closer to Tyler than to Marshall. (Dkt. No. 9, at 8–9). Specifically, Defendants point to the Troup High School football staff, the Reid family, and at least one treating physician. (*Id.*).

Plaintiffs argue that Defendants mischaracterize the evidence. While conceding that some witnesses live in and near Troup, Plaintiffs emphasize that those witnesses "have testified that they are willing to travel to Marshall and that travel to Marshall (rather than Tyler) does not impose a material burden upon them." (Dkt. No. 18, at 11). Those "Troup-based witnesses are going to be traveling anyway"—whether 30–35 minutes to Tyler by car or 60 minutes to Marshall. (*Id.*). Plaintiffs further contend that air travel from Houston to Marshall is much more convenient because of the direct Houston to Shreveport flight, and they point out that both they and the majority of the medical providers would likely use this option to appear at trial.

Again, the Court finds that this factor is neutral. While it might be slightly more convenient for the Troup-based witnesses to drive to Tyler, the additional 25-to-30 minutes of road time to

5

Marshall is "negligible."  *Brooks v. J.B. Hunt Transport, Inc.*, No. 2:18-cv-465-RSP, 2019 WL 13210805, at *3 (E.D. Tex. May 10, 2019) (discussing "a mere 32 mile[]" difference). Additionally, it certainly is more convenient for the Houston witnesses to travel to Marshall in light of the direct IAH–SHV flight cited by Plaintiffs.  Further, the Illinois witnesses will have to connect through some airport in either case, and their travel by air will be a similarly lengthy undertaking no matter how they arrange their travel.  There is not enough evidence on one side or the other to show that the cost of attendance for willing witnesses points toward one venue over the other.  The Court finds that this factor is neutral.

### C. Factor 4: Ease, Expeditiousness, and Expense of Trial

Defendants assert that Factor 4 also favors transfer.  (Dkt. No. 9, at 9–10).  This factor considers "all other practical problems that make trial of a case easy, expeditious, and inexpensive."  *Schwartz*, 2024 WL 3347371, at *1.  In this portion of the Motion, however, Defendants do no more than press points that had already been argued (and which have already been noted above).  (*See* Dkt. No. 9, at 9–10).  Put differently, defendants fail to recognize that this factor considers "all *other* practical problems" going to the ease, expeditiousness, and expense of trial.  Though Plaintiffs clearly call this out in their Response (Dkt. No. 18, at 12), Defendants fail to address this point in their Reply (*see generally* Dkt. No. 19).  Plaintiffs urge that this factor is neutral because there are no *other* such practical problems.  Finding no argument or evidence to the contrary, the Court agrees.  Accordingly, the Court concludes that Factor 4 is neutral.

### D. Factor 6: Local Interest in Deciding Localized Interests

Lastly, Defendants argue, in a somewhat conclusory manner, that Factor 6 favors transfer "because the incident occurred in Troup, Texas, which is both within the Tyler Division and

substantially closer to the Tyler Division Courthouse than to the Marshall Division Courthouse." (Dkt. No. 9, at 10–11).

Plaintiffs respond that the "location of incident, while closer to Tyler than Marshall, does not make this incident closely connected with either community." (Dkt. No. 18, at 15). In pressing this argument, Plaintiffs cite to this Court's well-established tendency to reject invitations to "elevate form[] over substance" when considering a community's interest in adjudicating its disputes. (*Id.* at 14 (quoting *Spencer v. Allstate Ins. Co.*, No. 2:16-cv-605-JRG, 2016 WL 6879598, at *4 (E.D. Tex. Nov. 22, 2016))). Indeed, this Court considers "[t]he reality of things," *Smith v. Michels Corp.*, No. 2:13-cv-185-JRG, 2013 WL 4811227, at *4 (E.D. Tex. Sept. 9, 2013), to be more persuasive than "the form of divisional boundaries," *Spencer*, 2016 WL 6879598, at *3.

As Plaintiffs point out, the "reality of things" here is that the Tyler Division has, at most, "'the very slightest of a greater interest' in the case than does the Marshall Division (due [mostly, if not] solely to divisional boundaries).'" (Dkt. No. 18, at 14 (quoting *Spencer*, 2016 WL 6879598, at *4)). Troup is not Tyler. Rather, Troup is a small community that lies well away from Tyler and between Tyler and Marshall. While Troup may be found within the Tyler division, those "artificial divisional lines" do not automatically trigger a local interest in adjudicating a case. *See Schwartz*, 2024 WL 3347371, at *3. As Plaintiffs note, and as has been discussed above, Troup is approximately 25 miles from Federal Courthouse in Tyler; the Federal Courthouse in Marshall is only 35 miles further away. (Dkt. No. 18, at 13). "This difference is negligible." *Brooks*, 2019 WL 13210805, at *3 (discussing "a mere 32 mile[]" difference). Also, given the size of the Tyler Division and the extreme population disparity between Tyler and the other communities that make it up, it is quite unlikely that any member of the Troup community—let alone the community as a whole—would have the opportunity to adjudicate this

7

case. Though the divisional lines might afford the Tyler Division "the very slightest of a greater interest" over the Marshall Division, the Court finds that this factor is neutral and does not weigh in favor of transfer. In reality, the interests of Marshall (population 23,646) align more closely with those of Troup (population 2006) than Tyler (population 105,995).[1]

## IV.   CONCLUSION

Having found that all of the above-discussed considerations are neutral, the Defendants have not met their burden to show that trying this case in the Tyler Division is clearly more convenient than litigating in the Marshall Division. The right of plaintiffs to select a forum of their choosing, within a district where venue is clearly proper, should be respected when the intervening differences within that district are, as a practical matter, of no material difference. Such is the case here. Accordingly, Defendants' Motion is **DENIED**.

**So ORDERED and SIGNED this 29th day of September, 2025.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[1] The United States Census Bureau reports that, in 2020, Troup had a population 2006. *Census Data*, U.S. Census Bureau, https://data.census.gov/table?q=Troup+city,+Texas. The Bureau reports Tyler's population at 105,995 for the same year. *Census Data*, U.S. Census Bureau, https://data.census.gov/table?q=Tyler+city,+Texas. Likewise Marshall had a population of 23,646  https://data.census.gov/table?q=Marshall+city,+Texas